HUNTER v. ROBBINS et al.

(Circuit Court, E. D. Arkansas, W. D. September 22, 1902.)

No. 1,362.

1. PARTIES—SUIT TO RECOVER FUNDS OF CORPORATION—RIGHT OF TREASURER TO SUE.

The treasurer of a corporation, as the proper custodian of its funds and trustee of an express trust, may maintain a suit in his own name against his predecessor in office for an accounting, and to recover money of the corporation alleged to have been wrongfully withheld by defendant, where the corporation authorizes or consents to such suit.

2. SAME—INDISPENSABLE PARTIES—SUIT BY TRUSTEE.

To such a suit in a federal court the corporation is not an indispensable party, and, under equity rule 47, it need not be made a party where its joinder would oust the jurisdiction of the court.

3. EQUITY JURISDICTION—SUIT TO CHARGE DEFENDANT WITH A TRUST.

Equity has jurisdiction of a suit to require an accounting by a former treasurer of a corporation, and also to charge a bank as trustee in respect to funds of the corporation which it is alleged to have held on deposit with knowledge of their ownership, and to have fraudulently permitted its codefendant to withdraw and convert to his own use.

In Equity.   On demurrer to bill.

The complainant, a citizen of the state of Missouri, as treasurer of the Searcy & Des Arc Railroad Company, a corporation created by and existing under the laws of the state of Arkansas, filed this bill against E. A. Robbins and the People's Bank of Searcy, Ark., both citizens of the state of Arkansas, alleging that prior to April 8, 1902, the defendant Robbins was the treasurer of the railroad company and as such had on that day in his hands a sum of money exceeding $7,000, which was on deposit with the defendant bank, which had full knowledge of the capacity in which Robbins held the money, and that it was the money of the railroad company; that on the 8th day of April, 1902, complainant was duly elected treasurer of the railroad company to succeed Robbins, and duly qualified as such; that he made a demand upon both the defendants for an accounting and a delivery to him of the funds of the company, which was refused; that the bank, in collusion with Robbins, has fraudulently permitted him to withdraw the funds from the credit of Robbins as treasurer of the railroad company, and to deposit them with the bank, in some other way to complainant unknown, with the fraudulent intent of assisting said Robbins in appropriating said funds to his own use.   By resolution of the board of directors of the railroad company, duly passed, complainant was directed and authorized to institute this action.   The prayer of the bill is that the defendants be required to render an account of the funds to which complainant is entitled as such treasurer, and for a decree against them for the amount.   To this bill, defendants demur.

Rose, Hemingway & Rose, for complainant.
S. Brundidge, J. W. House, and Menifee House, for defendants.

TRIEBER, District Judge (after stating the facts).   The demurrer challenges the jurisdiction of this court, and also the sufficiency of the bill.   As to the jurisdiction, the contention of the defendants is that the treasurer is not the proper party to maintain this action, but that the railroad company alone can prosecute it; that the railroad company being a corporation existing under the laws of the state of Arkansas, of which state both of the defendants are citizens, this court is without jurisdiction, and a corporation cannot delegate authority to its treasurer, who is a citizen of a state other than that of defendants, to institute a suit in this court which the corporation itself could not maintain, for want of a diversity of citizenship.   It is further urged that, even if the plaintiff is a proper party, the railroad company is also an indispensable party complainant, which would defeat the jurisdiction of this court.

Is the railroad company an indispensable party to this action?   It is well settled that, although persons may be proper parties to an action, unless they are indispensable to a proper and final determination of the controversy they need not be made parties.   Equity rule 47 specially provides that:

"When parties who might otherwise be deemed necessary or proper parties to the suit cannot be made parties, by reason * * * of the fact that their joinder would oust the jurisdiction of the court as to the parties before the court, the court may, in its discretion, proceed in the cause without making such persons parties; and in such case the decree shall be without prejudice to the rights of the absent parties."

In Sioux City Terminal R. & Warehouse Co. v. Trust Co. of North America, 27 C. C. A. 73, 82 Fed. 124, this subject is so fully discussed,

and the authorities collected, by Judge Sanborn, who delivered the opinion of the court, that it is unnecessary to cite them here. See, also, Anthony v. Campbell, 50 C. C. A. 195, 112 Fed. 212. Besides, the sole object of this bill is to collect the fund of which the complainant alleges, and the demurrer admits, he is the proper custodian, or, in other words, this is an action by a trustee of an express trust to recover a fund for the benefit of his cestui que trust. The court is not called upon to administer or distribute the fund, nor is there anything in the bill in any wise affecting the relations of the complainant with the railroad company of which he is the treasurer. While it is true that the general rule is that, in suits respecting trust property brought either by or against the trustees, the cestuis que trustent, as well as the trustees, are necessary parties, there are several exceptions to this rule. One of them is that where the suit is brought by the trustee to recover the trust property or to reduce it to possession, and in no wise affects his relation with his cestui que trust, it is unnecessary to make the latter a party. Horsley v. Fawcett, 11 Beav. 569; Carey v. Brown, 92 U. S. 171, 23 L. Ed. 469; Ross v. City of Ft. Wayne, 11 C. C. A. 288, 63 Fed. 469; Dickenson v. Harris, 48 Ark. 355, 3 S. W. 58. In Carey v. Brown, supra, the court, speaking of this exception, say, "Such is now the settled rule of equity pleading and practice." 92 U. S. 172, 23 L. Ed. 469. The treasurer of the corporation is the proper custodian of its funds, and his receipt to his predecessor for the funds in his hands is a good release, if the money was paid over to him. As such treasurer, he is a trustee of an express trust for the use of his corporation, and responsible to it for the proper discharge of his duties. There is no reason why he should be treated differently than a trustee in a mortgage, and the law is well settled, at least in the national courts, that such a trustee may maintain a suit for the protection of the cestui que trust without joining him as a party, unless the court is to make a distribution of the funds. Nor will the citizenship of the beneficiary affect the jurisdiction of the court, that of the trustee alone determining it. Coal Co. v. Blatchford, 11 Wall. 172, 20 L. Ed. 179; Knapp v. Railroad Co., 20 Wall. 117, 22 L. Ed. 328; Dodge v. Tulleys, 144 U. S. 451, 12 Sup. Ct. 728, 36 L. Ed. 501; Morris v. Lindauer, 4 C. C. A. 162, 54 Fed. 23; Pennington v. Smith, 24 C. C. A. 145, 78 Fed. 399; Moon, Removal, § 134. The supreme court of Arkansas has held, in two well-considered cases, that to recover moneys which should be paid into the county treasury, either by the former treasurer or the collector of taxes, the suit may be maintained either by the treasurer of the county in his own name, or by the state for the use of the county. Haynes v. Butler, 30 Ark. 69; Hunnicutt v. Kirkpatrick, 39 Ark. 172. And those decisions were rendered in the absence of any statute authorizing the treasurer to sue. So, in the case at bar, perhaps the corporation could have maintained this action; but so can the treasurer, if the corporation sees proper to permit him to do so. The duty of the treasurer, upon the expiration of his term of office, is to pay the funds of the corporation to his successor, who is the proper custodian of all the corporate funds. Being entitled to the possession of a thing, whether in his own right or as trustee,

pledgee, or bailee, such person may maintain a suit for the recovery thereof in his own name. Clifton v. Wynne, 80 N. C. 145; Johnson v. Goodridge, 15 Me. 29; Cobbey, Repl. § 423.

The suggestion of counsel for defendants that the decree of the court will not be conclusive on the railroad company, if not a party to the action, is fully met by the allegation in the bill, which the demurrer confesses to be true, that the suit is prosecuted by complainant by authority, and in pursuance of a proper direction of the corporation.

It is next urged that the complainant has a complete and adequate remedy at law. In the national courts, equity will not assume jurisdiction if the law courts afford a complete and adequate remedy, regardless of the practice prevailing in the courts of the state in which the cause of action accrued or is pending. Section 723, Rev. St. U. S., prohibits it. But to have this effect it is not enough that there is a remedy at law. It must be plain and adequate, and as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity. Boyce v. Grundy, 3 Pet. 210, 7 L. Ed. 655; Watson v. Sutherland, 5 Wall. 74, 18 L. Ed. 580; Davis v. Wakelee, 156 U. S. 680, 15 Sup. Ct. 555, 39 L. Ed. 578; Smith v. Bank, 32 C. C. A. 368, 89 Fed. 832. Were this a bill to seek to recover the funds from the former treasurer alone, the remedy at law would be adequate and complete; but the main object of this bill is to charge the defendant bank as a trustee, upon the ground that, with full knowledge of the fact that the fund deposited with it by its co-defendant belonged to the railroad company, it fraudulently assisted Robbins in appropriating the money to his own use by changing the account from that of treasurer of the railroad company to himself individually. This allegation clearly entitles the owner of the money to have the bank declared in equity a trustee. Perry, Trusts, § 828; Duncan v. Jaudon, 15 Wall. 165, 21 L. Ed. 142. Nor is the character of trust money changed, although the trustee deposits it in the bank to his personal credit, if the bank has notice of the trust, and the beneficial owner is entitled in equity to a charge upon the new investment to the extent of the trust fund. Central Nat. Bank of Baltimore v. Connecticut Mut. Life Ins. Co., 104 U. S. 54, 26 L. Ed. 693; Bank v. Walker, 130 U. S. 267, 9 Sup. Ct. 519, 32 L. Ed. 959; Carroll Co. Bank v. Rhodes, 69 Ark. 43; Pennington v. Smith (C. C.) 69 Fed. 188; Stock Yards v. Gillespie, 137 U. S. 411, 11 Sup. Ct. 118, 34 L. Ed. 724. In the last-cited case, Mr. Justice Brewer, speaking for the court, says:

"We are met with the proposition that equity ought not to interfere when the law furnishes a remedy; that when a bank has money in its possession which in fact belongs to a third party, received from whatever source it may be, an action at law will lie; and that therefore no case for equitable cognizance is presented. But this latter proposition has some limitations. It may be true if the full legal title to the moneys is in such third party, but it is not true when his title is equitable, rather than legal; and the right of these complainants, as against the bank, to the moneys deposited by their factor, is equitable. True, the obligation of a factor to his principal for moneys received on the sale of property consigned to him for sale is not a debt created by one acting in a fiduciary capacity, within the meaning of the bankrupt law, but it does not follow that no fiduciary obligation inheres in

such debt. The case of Chapman v. Forsyth, 43 U. S. 202, 11 L. Ed. 236, turned not so much on the existence of a trust obligation as on the question as to what trust obligations were intended by the bankrupt act. The court observes: 'The cases enumerated, "the defalcation of a public officer," "executor," "administrator," "guardian," or "trustee," are not cases of implied, but special, trusts, and the "other fiduciary capacity" mentioned must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act.' It cannot be doubted that an element of a fiduciary nature enters into the obligation of the factor,—an element different from that which exists in case of vendor and purchaser. There is a confidence beyond that in the capacity and willingness of a debtor to pay. There is a reliance of a principal on his agent,—a confidence that the agent will do as his principal directs, and be loyal to the duties springing from such relation. When property is consigned to a factor, and before sale, who doubts the continuing title of the principal, or his power to restrain unauthorized disposition of such property, or to compel observance by the factor of all the conditions of the trust reposed in him? Can it be that on the moment of sale all these rights of the principal and consignor end, and that there has arisen in their place nothing but a simple debt from factor to principal, with absolute power on the part of the factor to dispose of the moneys received as he sees fit, and with no power on the part of the principal to challenge such misappropriation, when the party who receives the moneys knows the wrongful act of the factor? While it may be true that a legal title to the moneys received on such sale is in the factor, rather than in the principal, so that the principal may not maintain an action at law as against one receiving such moneys from the factor, yet equitably those moneys belong to the principal, and equitably they may be followed into the hands of any person who receives them, chargeable with notice of their trust character. The case of Central Nat. Bank of Baltimore v. Connecticut Mut. Life Ins. Co., 104 U. S. 54, 26 L. Ed. 693, is in point. In that case one Dillon was the agent of the insurance company. He kept an account with the bank. The account was entered on the bank books with him as general agent. As agent of the insurance company he collected, and it was his duty to remit, the premiums. In the course of his dealings with the bank he borrowed money on his personal obligation. Finally the bank sought to appropriate his deposits to the payment of his debt. The insurance company filed its bill in equity to recover the amount of those deposits, as equitably belonging to it. The fact that they were premiums received for the insurance company was shown. It was held that, under the circumstances, the bank received them with knowledge that, though the legal title to the moneys was in Dillon, the beneficial ownership was in the insurance company, and the decree in favor of the insurance company was therefore sustained. This court, by Mr. Justice Matthews, discusses the question of the liability of the bank to the insurance company, and the necessity of a suit in equity to establish the rights of the company, in these words: 'It is objected that the remedy of the complainant below, if any existed, is at law, and not in equity. But the contract created by the dealings in a bank account is between the depositor and the bank alone, without reference to the beneficial ownership of the moneys deposited. No one can sue at law for a breach of that contract except the parties to it. There was no privity created by it, even upon the facts of the present case, as we have found them, between the bank and the insurance company. The latter would not have been liable to the bank for an overdraft by Dillon, as was decided by the court in Central Nat. Bank of Baltimore v. Royal Ins. Co., 103 U. S. 783, 26 L. Ed. 459; and, conversely, for the balance due from the bank no action at law upon the account could be maintained by the insurance company. But although the relation between the bank and its depositor is that merely of debtor and creditor, and the balance due on the account is only a debt, yet the question is always open, "To whom, in equity, does it beneficially belong?" If the money deposited belonged to a third person, and was held by the depositor in a fiduciary capacity, its character is not changed by being placed to his credit in his bank account.' " 137 U. S. 422, 11 Sup. Ct. 121, 34 L. Ed. 274.

In Clews v. Jamieson, 182 U. S. 461, 21 Sup. Ct. 845, 45 L. Ed. 1183, a fund had been deposited by the parties to a contract with the stock exchange for the purpose of securing the performance of the contract. A bill in equity having been filed for the fund, it was claimed that the remedy was at law; but the court, in sustaining the jurisdiction of the equity court, said:

"It is shown that the money deposited by Schwartz & Co. was deposited by them for and in behalf of the complainants, and Schwartz & Co. lay no claim to the fund, or any portion of it. Complainants demanded from the committee the payment of the whole fund to them on the ground that they were entitled to such payment by the terms of the trust, and because of the violation of the contract by Jamieson & Co., to secure which the latter deposited $7,000 of the fund in question. The committee has refused to pay over any portion of this fund to complainants, although it lays no claim to it, or any portion of it, on its own behalf. There is a dispute in regard to the right of the complainants to any portion of this fund, and a refusal on the part of the committee to pay it over to them. By reason of the facts, the committee occupied, from the time of the deposit of the funds, a fiduciary relation towards the parties depositing it, and it became a trustee of the fund, charged with the duty of seeing that it was applied in conformity with the provisions creating it." 182 U. S. 479, 21 Sup. Ct. 852, 45 L. Ed. 1183.

In the case at bar the bill charges that the money was deposited by Robbins with the bank as treasurer of the railroad company, which was full notice to it that the money did not belong to him individually, but to the company. By accepting the deposit in this manner, and having full notice of Robbins' fiduciary position, it assumed the same relation, and became a trustee of the fund, charged with the duty of seeing to it that it was applied only in conformity with his duties as treasurer, and by aiding him to convert that fund to his own use it became liable to the company therefor.

The allegations in the bill are sufficient to entitle complainant to relief in equity, and the demurrer is accordingly overruled.